# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 13, 2023

Lyle W. Cayce
Clerk

No. 22-50742

United States of America,

*Plaintiff—Appellee*,

*versus*

Fidel Gutierrez-Garcia,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:21-CR-1073-4

Before Willett, Engelhardt, and Oldham, *Circuit Judges*.
Per Curiam:[*]

After a bench trial, the district court found Fidel Gutierrez-Garcia guilty of possessing with intent to distribute marijuana and sentenced him to two years of imprisonment. On appeal, Gutierrez argues the district court abused its discretion when it denied his motion to dismiss the indictment. Finding no abuse of discretion, we affirm.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-50742

## I.

Border Patrol agents found Gutierrez and three other suspects with backpacks near the Texas-Mexico border. The packs held about 108 kilograms of marijuana. Gutierrez was indicted for importing one hundred kilograms or more of marijuana, *see* 21 U.S.C. §§ 952(a), 960(a), (b)(2), and possessing with intent to distribute one hundred kilograms or more of marijuana, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(B).

At his initial appearance, Gutierrez told the court, through a Spanish interpreter, that his primary language was Tepehuan (a dialect spoken by certain indigenous people in Mexico). Gutierrez also stated that he spoke "a little" Spanish and was able to understand the interpreter "a little bit." ROA.133.

Gutierrez subsequently moved to dismiss the indictment without prejudice. He argued that he was unable to understand the proceedings against him or to communicate with his attorney absent a Tepehuan interpreter. The district court held an evidentiary hearing on Gutierrez's motion to dismiss. At the hearing, Gutierrez called his attorney, Bob Garcia. Garcia, a fluent Spanish speaker, testified that he had discovered during his first meeting with Gutierrez that his native language was Tepehuan and that he spoke limited Spanish. Garcia stated that, in his opinion, Gutierrez was unable to understand the legal concepts and rights needed to participate in his defense. Gutierrez also called Luis Navarro, a Spanish interpreter who had previously interpreted for Gutierrez at his initial appearance. Navarro testified that he was unable to communicate the necessary legal concepts with Gutierrez in Spanish. Navarro also stated that his attempts to locate a Tepehuan interpreter had failed.

The Government called interpreter Christian Saenz, who interpreted for Gutierrez in Spanish during his post-arrest interview. Saenz noted that

No. 22-50742

Gutierrez gave comprehensible Spanish responses to his Spanish questions. He noted that Gutierrez did not give long answers but did give interpretable phrases in Spanish. The Government also called one of Gutierrez's co-defendants, Guadalupe Arguelles-Quintero. Arguelles testified that he remembered Gutierrez speaking Spanish with himself and other members of their group during their six-night backpacking trip from Mexico to the United States.

Gutierrez then voluntarily took the stand and testified with the help of a Spanish interpreter. ROA.219. Gutierrez testified that he understood he had been arrested by the police because he "was carrying pot." ROA.221. He answered additional questions about his role in carrying the drugs and said he thought he would be paid to carry them into the United States. And he indicated he understood the maximum sentence he could face if convicted.

The district court denied Gutierrez's motion to dismiss the indictment. The court concluded that Gutierrez's testimony was the best evidence of his ability to speak Spanish. ROA.78. The court reasoned that Gutierrez "was able to communicate via the [c]ourt's Spanish interpreter with ease, despite being asked long complex questions." ROA.78. And the court concluded that its observations of Gutierrez communicating in Spanish, buttressed by the testimony of Arguelles and Navarro, supported the denial of the motion to dismiss. The court explained that Gutierrez's inability to understand legal concepts was less troubling than "not being able to understand the language . . . we're interpreting . . . in." ROA.229.

During the subsequent bench trial, the parties stipulated that Gutierrez possessed with intent to distribute marijuana. The district court found Gutierrez guilty of possessing with intent to distribute 100 kilograms or more of marijuana. The district court sentenced Gutierrez to two years imprisonment, a bottom-of-the-Guidelines sentence, and three years of

supervised release. Gutierrez timely appealed, arguing that the district court failed to provide an appropriate interpreter.

## II.

We review the decision to appoint an interpreter for abuse of discretion. *United States v. Bell*, 367 F.3d 452, 463 (5th Cir. 2004). A court abuses its discretion when "it bases its decision on an error of law or a clearly erroneous assessment of the evidence." *United States v. Handlon*, 53 F.4th 348, 351 (5th Cir. 2022) (quotation omitted).

When a defendant "only or primarily" speaks "a language other than" English, the Court Interpreters Act requires that a district court "utilize the services" of an interpreter "in judicial proceedings instituted by the United States." 28 U.S.C. § 1827(d)(1)(A). A defendant's statutory right to an interpreter under the Act is violated where the lack of an interpreter inhibited a defendant's comprehension of the proceedings or communication to such an extent that the proceedings were "fundamentally unfair." *Bell*, 367 F.3d at 464 (quotation omitted). This is "a two-step inquiry." *United States v. Hasan* (*Hasan I*), 526 F.3d 653, 666 (10th Cir. 2008) (Gorsuch, J.) (quotation omitted). "First, the district court must assess whether comprehension or communication was inhibited." *Id.* If so, then the court must ask whether the proceedings were rendered fundamentally unfair as a result. *Id.* We analyze each step in turn.

*First*, the district court did not clearly err in concluding that Gutierrez could understand Spanish well enough to understand the proceedings against him. *See United States v. Tapia*, 631 F.2d 1207, 1209 (5th Cir. 1980) (acknowledging "that the necessity for . . . an interpreter is a question of fact"); *United States v. Hasan* (*Hasan II*), 609 F.3d 1121, 1127 (10th Cir. 2010) ("Under the abuse-of-discretion standard, we review the district court's factual determinations for clear error."). "There is no clear error if the

district court's finding is plausible in light of the record as a whole." *United States v. Johnson*, 14 F.4th 342, 349 (5th Cir. 2021) (citation omitted).

Here, the district court held an evidentiary hearing and heard from multiple witnesses before denying Gutierrez's motion to dismiss. The district court observed Gutierrez testifying through a Spanish interpreter at the evidentiary hearing firsthand. From its firsthand observation, the district court concluded that Gutierrez was able to communicate through the Spanish interpreter "fluidly," "quickly," and "with ease." ROA.78, 220-26. During the hearing, Gutierrez explained through the Spanish interpreter that he understood he was arrested "[b]ecause [he] was carrying pot." ROA.221. Gutierrez further explained that he was offered a job "[t]o pick the pecans" but that, when he arrived in Chihuahua, he learned that the job was actually smuggling marijuana. ROA.222. The district court concluded that Gutierrez could understand Spanish sufficiently well that he was capable of understanding and answering "long complex questions" in Spanish, ROA.78, such as whether he understood that the maximum penalty for his crime is 20 years, ROA.223. We have said before that the district court "who is in direct contact with the witnesses, [a]ppellants, and the interpreters must be given wide discretion" in determining whether an interpreter is needed. *Bell*, 367 F.3d at 464 (quotation omitted). That is, of course, because the district court was "in the best position to assess [Gutierrez's] language usage, comfort level[,] and intelligibility" at the evidentiary hearing. *Hasan II*, 609 F.3d at 1127 (quotation omitted).

The district court also relied on the testimony of additional witnesses at the evidentiary hearing in denying Gutierrez's motion. According to those witnesses, when the Government agent conducted Gutierrez's post-arrest interview through a Spanish interpreter, Gutierrez understood Spanish and gave "complete phrases to interpret," so that "the interpretation was flowing orderly." ROA.202. The agent learned from all three of Gutierrez's

co-defendants that they spoke to Gutierrez in Spanish during the backpacking expedition. ROA.13, 191–92. Additionally, the testimony of one of Gutierrez's co-defendants at the evidentiary hearing corroborated that information.

True, there is evidence in the record that Gutierrez did sometimes struggle to understand legal concepts. But there is ample record evidence to support the district court's conclusion that Gutierrez's inability to "understand legal concepts" did not stem from his inability to "understand the language" that the proceedings were being interpreted in. ROA.229. The record indicates that Gutierrez never attended school. Further, the district court's staff interpreter testified that Gutierrez could not understand legal concepts in any language because those concepts do not exist in the Tepehuan language or culture. And again, the district court is in the best position to weigh those challenges against the rest of the record to determine whether Gutierrez's comprehension and communication were inhibited by the lack of an interpreter. *See Bell*, 367 F.3d at 464.

*Second*, even assuming Gutierrez's comprehension and communication were inhibited, the proceedings below were not fundamentally unfair. *See id.* at 463 ("The ultimate issue is whether the use of the interpreter made the trial fundamentally unfair." (quotation omitted)). "[A]n inquiry into fundamental fairness focuses on whether the purposes of the Act—comprehension of the proceedings and the ability to effectively communicate—were adequately met." *Hasan I*, 526 F.3d at 667 (quotation omitted). "Minor deviations from ideal communication therefore have been held not to render a proceeding fundamentally unfair." *Id.* Here, Gutierrez knowingly and voluntarily admitted his guilt to the charge of possession of marijuana with intent to distribute. He was able to explain the facts underlying his crime and accepted responsibility for them. He also repeatedly said that he understood the punishment he faced. Any deviations from ideal

No. 22-50742

communication in the proceedings below were sufficiently minor that they did not render the proceedings fundamentally unfair.

AFFIRMED.